Skean *v.* Skean.

KATE SKEAN

*v.*

BENJAMIN F. SKEAN.

1. If a husband drives his wife away, or treats her so brutally as to compel her to flee for' safety, or is so cruel and malignant towards her as to show that he means to force her from his home, though she leaves the matrimonial habitation, he, in law, deserts her.

2. But a mere failure by a husband to furnish his wife with sufficient support is not a ground of divorce, nor will he be considered a deserter if she leaves him for that cause.

3. So long as a husband shares with his wife whatever means of support he may have, the law makes it her duty to abide with him; and if she leaves him because he does not give her as much or as good as she desires, or as may be necessary, the law considers her a deserter.

On petition for divorce for desertion.

Heard on proofs taken *ex parte*, and report of Special Master Levi T. Hannum, reporting in favor of decree for petitioner.

*Mr. F. Kingman,* for petitioner.

THE VICE-CHANCELLOR.

This is a suit by a wife for divorce. The ground is desertion. The husband makes no defence. The desertion is alleged to have commenced May 10th, 1877. The petition was sworn to on May 15th, 1880, and filed two days afterwards. The period intervening between the time when it is alleged the desertion began and the date on which the petition was filed is three years and seven days.

The proofs, in my judgment, utterly fail to make a case against the defendant. On the contrary, I think they make a much stronger case against the petitioner than they do against her husband.

Skean *v.* Skean.

The parties were married in Trenton, on the 10th of October, 1875, and soon afterwards took up their residence in the city of Philadelphia, where they continued to reside together until May 10th, 1877. The defendant is a poor man; he is represented to be also idle and thriftless. The petitioner gave birth to a child in February, 1877. She says the provision made by her husband for her support and comfort, during her confinement and afterwards, was very inadequate. Whether it was the best her husband's means could provide, she does not state. After her confinement, she says, she became sick and feeble, and continued so for some time, and at last wrote to her father, informing him of her condition, who, with her mother, came to see her on the 10th of May, 1877. As this is the date when she charges that her husband began the desertion which entitles her to a divorce, it is quite proper that she should be allowed to describe what occurred, in her own way. She says:

"My parents proposed that I should return with them to Trenton; my husband made no objection, and they took me with them to Trenton, where I have remained ever since; * * * I took my child with me; my father paid the railroad fare; at the same time I removed my furniture and household articles that my father and mother had given to me; my father removed them and paid the transportation; my husband was present when I left and when the goods were removed, but made no objection."

There is certainly nothing in the occurrence here described which furnishes any evidence whatever of either a purpose, or even a desire, on the part of the husband, to desert his wife. She was feeble and sick, and her parents expressed a desire to take her to their home, where she could have a mother's care, and her husband made no objection to her going. Why should he have opposed such a thing? To have given even a reluctant consent might very well, under the circumstances, have been regarded as conjugal unkindness. His failure to object certainly does not afford the least evidence of desertion. But what did the wife's conduct indicate? What was her purpose in removing all her household effects?

She desires it understood she simply went on a visit, with no thought of desertion in her mind; but she went exactly in the

manner a wife would go who had determined to leave her husband forever. She removed everything she had contributed to make their dwelling-place a home. Whatever may have been her purpose, there can be no doubt that her conduct wore a strong appearance of desertion. She assigns no cause for her extraordinary course, nor does she attempt to justify or explain it. What seems to me still more decisive is the fact that she never returned to her husband.

But he went to see her. The petitioner says the next week after she went to her father's house, her husband came there to see her, and remained about two hours; that she saw him in the back parlor, in the presence of her father and her mother, but that he did not ask her to leave them and go with him. This visit was made in the evening. It does not appear that either wife or parents invited the defendant to spend the night with the petitioner. The defendant made a second visit a few days afterwards. The petitioner says she saw him on this occasion in the same room; that he did not ask her to go with him, but she told him that whenever he was ready to provide her with a home, even if it was' only two rooms, she was ready to go with him. She says he made no reply. The parties did not meet again, so far as the evidence shows, until September, 1877. The defendant then went to his father-in-law's house, in company with a police officer. The petitioner gives the following description of that visit:

"My mother met them at the door, then called me; when I went to the door, my husband did not speak, but the officer asked if I was this man's wife; I said I was; the officer then said, 'He wishes to see you;' I said, 'Very well, I am here;' my husband did not look up or speak to me; I then told the officer why I was at my father's—that my husband had not provided for me when I lived with him, and my father had brought me home because I was sick and had nothing to eat; the officer then said, 'Well, that is a different story;' they then went away; my husband did not contradict anything I said; I do not know why my husband brought an officer with him; they did not disclose any reason for this singular visit."

The petitioner does not seem, at the time, to have been at all curious or inquisitive about the matter; she asked neither the

officer nor her husband why the officer was there, nor what was the object of their visit.

This is the petitioner's whole case. As already remarked, the evidence utterly fails to make a case of desertion. I believe, moreover, the court has not the whole truth. I believe it is impossible for any one at all acquainted with human conduct to read the petitioner's evidence without seeing quite plainly that the descriptions given of what occurred when she left her husband, and also of what occurred on the occasions of his visits, are very incomplete and imperfect. She may have intended to tell everything, but if such was her purpose, it is apparent she remembered but little besides what she understood to be her wrongs. But if we take her testimony as presenting the whole truth, her case is merely this : She left her husband and went to her father's house, because her husband did not furnish her with sufficient food and proper care. It does not appear that he did not do for her the best he could, or that he refused to share with her such means of support as he had. He failed to support her, and she left him. He did not refuse to allow her to share with him in whatever he had. Her separation from him, for this cause, was not a desertion by him. It is true, it is not always the one who leaves the matrimonial habitation that is the deserter. The husband may drive his wife away, or he may treat her so brutally as to compel her to flee for safety, or his conduct may be so cruel and malignant as to show that he means to force her away. If a wife, for either of these causes, separates herself from her husband, and he allows her to remain away for the statutory period, without professing sorrow for his violations of conjugal duty, and promising to amend his conduct, and asking her to return, he, in the eye of the law, is the deserter, and she has a right to ask for a dissolution of the marriage tie. But a mere failure by a husband to furnish his wife a sufficient support is not a ground of divorce; nor will he be considered a deserter if she leaves him for that cause. So long as he shares with her whatever means of support he may have, the law makes it her duty to abide with him; if she leaves him because he cannot give her as much or as good as she desires or as may be

necessary, she is the deserter, and not he. The law upon this subject is settled. Chancellor Zabriskie in *Palmer* v. *Palmer*, *7 C. E. Gr. 88*, said:

"There is no rule that makes want of sufficient support by a husband, or total want of support, a desertion of his wife. It is no cause for divorce, and the court cannot, by construction, convert it into a ground of divorce by calling it desertion. * * * By marriage, a wife agrees to share the fortunes of her husband, in poverty and sickness, as well as in affluence and health. She may be obliged to aid him in her own support, and still be bound to adhere to him. And she is not, because he is poor and her lot uncomfortable, justified in leaving him and betaking herself to the luxuries of the home of her father. Much less can she convert an unwarranted abandonment of her husband into a desertion by him."

The same doctrine was enunciated in *Laing* v. *Laing, 6 C. E. Gr. 248*.

The petition must be dismissed.

This case was decided some time ago, by a simple statement that the proofs did not establish a case of desertion. Counsel thereupon requested to be informed of the reasons for this conclusion, in order that he might determine what course it was proper for him to pursue. This opinion presents the reasons upon which the judgment of the court rests.